IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,017

STATE OF KANSAS,
*Appellant*,

v.

RONALD D. MORLEY,
*Appellee.*

SYLLABUS BY THE COURT

1.

When an appellate court is considering whether a sentencing court erred in granting or denying departure based on a nonstatutory mitigating factor, the reviewing court applies an abuse of discretion standard.

2.

Appellate review of a district court's decision granting or denying departure based on a nonstatutory mitigating factor should follow a three-step framework: (a) determine whether the sentencing court's nonstatutory factor can be a mitigating factor as a matter of law under K.S.A. 2019 Supp. 21-6815(c); (b) if it can be, then decide whether that nonstatutory factor's existence is supported by the record; and (c) if so, then determine whether the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case based on that nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court.

1

3.

The term "substantial" in the sentencing departure context means something that is real, not imagined, and of substance, not ephemeral.

4.

A compelling reason to override the statutory presumptive sentence of imprisonment is one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence.

Review of the judgment of the Court of Appeals in 57 Kan. App. 2d 155, 448 P.3d 1066 (2019). Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed January 29, 2021. Judgment of the Court of Appeals reversing the district court with directions is affirmed. Judgment of the district court is reversed, sentence is vacated, and case is remanded with directions.

*Stacy Edwards*, assistant attorney general, argued the cause, and *Derek Schmidt*, attorney general, was with her on the brief for appellant.

*James C. Heathman*, of Heathman Law Office PA, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  Ronald D. Morley seeks our review after the lower courts disagreed about his entitlement to a dispositional departure to probation from a presumptive sentence of imprisonment. Morley pled no contest to one count of securities fraud and one count of acting as an unregistered issuer agent after the State charged him in connection with a high-risk investment scheme that cost four Kansas investors $845,900 in combined losses. The district court granted the departure, but a Court of Appeals panel reversed, vacated the sentence, and remanded the case for resentencing. *State v. Morley*, 57 Kan. App. 2d 155, 448 P.3d 1066 (2019) (holding substantial competent evidence

2

lacking to find Morley accepted responsibility, and substantial and compelling reason lacking under the totality of the circumstances to support departure). We agree with the panel's outcome. In explaining our decision, we attempt to clarify the standard of review for departure cases such as Morley's.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Morley with 12 felony counts: four alleging securities fraud, four alleging he acted as an unregistered issuer agent, and four alleging sale of an unregistered security. Before trial, he entered a deal to plead no contest to one count of securities fraud and one count of acting as an unregistered issuer agent. He also acknowledged owing restitution to the four Kansas victims, but reserved the right to dispute how much he owed. In return, the State agreed to dismiss the remaining counts with prejudice, agreed to concurrent sentences, allowed Morley to argue about the restitution amount, and allowed him to seek dispositional and durational departure sentences.

The district court accepted the plea and found Morley guilty on the two charges. The appellate record does not include a transcript from the plea hearing, but the State explained in a sentencing memo the factual basis for the plea that does not seem to be disputed. It stated:

> "In brief, Mr. Morley sold preferred stock shares in Summit Trust Company to four
> Kansas investors: [B.A.], [T.A.-F.], [L.H.], and [D.R.]. Mr. Morley counseled the victims
> the preferred stock was a safe investment with a guaranteed 6% quarterly dividend, and
> he further advised the victims the preferred stock was a good fit for their stated
> investment goals and avowed low risk tolerances. The victims relied entirely on Mr.
> Morley's representations in making their preferred stock purchases, as Mr. Morley failed
> to provide any of the victims with a prospectus or offering memorandum. Contrary to Mr.

3

Morley's representations, the preferred stock investment was high risk and low liquidity and was only open to accredited investors. Mr. Morley knew none of the Kansas investors qualified as accredited investors, and yet nonetheless sold the Kansas victims the preferred stock securities. In addition, Mr. Morley failed to notify the victims he had been permanently barred from the securities and investment advisory business in Maryland after a 2006 consent order issued by the Securities Commissioner of Maryland.

"Mr. Morley was not and never has been registered to sell securities in Kansas as an issuer agent. Mr. Morley earned between a 5.2% and 6% commission for the Kansas victims' purchase of preferred stock.

"[B.A.] invested a total of $352,500 in the Summit Trust preferred stock; [T.A.-F.] invested $252,400; [L.H.] invested $150,000; and [D.R.] also invested $150,000. [T.A.-F.] redeemed $29,000 in preferred stock shares over time (leaving a remaining principal of $223,400), and [D.R.] redeemed $30,000 in preferred shares (leaving a remaining principal of $120,000).

". . . None of the Kansas investors have been able to recover any of their lost principal."

The State calculated the four investors lost $845,900 in total and said Morley received $50,154 in commissions for those sales. Morley admitted receiving about $3 million in commissions over a 10-year period from Summit Trust Company stock sales throughout the United States.

Because the crimes resulted in more than $25,000 in losses, both convictions carried presumptive prison terms under a special sentencing rule set out in K.S.A. 2019 Supp. 17-12a508(a)(5) ("Any violation of K.S.A. . . . 17-12a402(a), . . . 17-12a501. . . resulting in a loss of $25,000 or more shall be presumed imprisonment."); K.S.A. 17-12a501 (securities fraud); K.S.A. 2019 Supp. 17-12a402 (acting as an unregistered issuer

4

agent). At the sentencing hearing, three investors presented victim impact statements. Each directly or indirectly insisted Morley should be imprisoned.

As to restitution, the State sought $845,900 in lost principal. Morley initially insisted $50,154 would be "appropriate" because that was his actual gain from his commissions on the four Kansas sales. But he expressed his "willingness to repay even more than that . . . whatever the Court indicates." In addressing his victims, Morley claimed: "I will take my last dying breath making certain that you get every dime of your money back and my responsibility of that and the only way that I can do that is to stay in the insurance business and enable my experience to be applied to my obligations that I'm committing to." The district court ordered $845,900 in restitution.

The court also sentenced Morley to 41 months' imprisonment for the securities fraud conviction and 32 months' imprisonment for his acting as an unregistered issuer agent conviction with both sentences to run concurrent. But over the State's objection, the court granted Morley dispositional departure and placed him on 36 months' probation "to truly give him the opportunity to make restitution." To justify this, the court explained:

> "[T]he ground that I'm relying on is . . . the taking of responsibility. . . . [Morley] did agree to pay restitution as ordered and to me, that's part of the focus of responsibility. The other part is he did plea. He [pled] no contest, but he certainly acknowledged and he understood he was going to be found guilty.
>
>   . . . .
>
> ". . . It's the overall issue of accepting responsibility by entering a plea to the two offenses and agreeing to pay restitution is where I'm hanging my hat on."

The court made clear it rejected all other grounds Morley advanced to support departure, i.e., he played a minor role in the offenses; similarly situated defendants have received downward departures; and he had no criminal history, was not a danger to the public, and was working to recover his victims' assets. The court repeated that acceptance of responsibility was the only substantial and compelling reason for departure when settling a dispute between the State and Morley over the journal entry.

The State appealed the departure order. A Court of Appeals panel reversed, holding Morley's acceptance of responsibility was not supported by substantial competent evidence. It further held this factor alone did not constitute a substantial and compelling reason for the departure, even if the factual record demonstrated Morley had accepted responsibility. *Morley*, 57 Kan. App. 2d at 168, 176. We granted Morley's petition for review to resolve the lower courts' conflict.

Jurisdiction is proper. K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

K.S.A. 2019 Supp. 21-6815(a) requires a court to impose the presumptive sentence set by the revised Kansas Sentencing Guidelines Act, K.S.A. 2019 Supp. 21-6801 et seq., unless the court finds substantial and compelling reasons to impose a departure sentence. See *State v. Bird*, 298 Kan. 393, 397, 312 P.3d 1265 (2013) ("'To be substantial the reason must be real, not imagined, and of substance, not ephemeral.' A reason is 'compelling' when it 'forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose.' [Citations omitted.]").

6

K.S.A. 2019 Supp. 21-6815(c) lists possible mitigating factors, but that listing is nonexclusive. A court may rely on other factors to depart so long as that nonstatutory factor is consistent with the KSGA's principles. In this case, the panel held the no contest plea and Morley's agreement to pay restitution could not be considered as substantial competent evidence to support the district court's nonstatutory mitigating factor that Morley had accepted responsibility. *Morley*, 57 Kan. App. 2d at 162-68.

As to his plea, the panel reasoned, "A no contest plea is 'a formal declaration that the defendant does not contest the charge.' K.S.A. 22-3209(2). It is not an admission of wrongdoing. . . . By his entry of no contest pleas, Morley avoided admitting his legal responsibility for the securities violations perpetrated on the four investors." *Morley*, 57 Kan. App. 2d at 163. And the panel pointed out that while acknowledging he "misled" his Kansas victims, he also tried to minimize his own criminal wrongdoing. 57 Kan. App. 2d at 164. The panel found Morley's motivation to plead no contest was not to take responsibility but to obtain a favorable outcome in his criminal proceedings. 57 Kan. App. 2d at 164.

As to restitution, the panel made two points. First, under K.S.A. 2018 Supp. 21-6604(b)(1), restitution to a victim is not optional unless a sentencing court finds restitution unworkable. And because of this, the panel stated, "[W]e do not understand the district court's finding that Morley's willingness to pay restitution—which is not optional but mandated by Kansas law—constitutes substantial competent evidence of his acceptance of responsibility." 57 Kan. App. 2d at 166. Second, in the panel's view, Morley did not present any workable restitution plan and the district court merely referenced a "'general' restitution plan." 57 Kan. App. 2d at 167. The panel held restitution was illusory, especially when considering Morley's "extremely limited income, and pending bankruptcy proceedings," and his age of 64. 57 Kan. App. 2d at 167. The

7

panel found he had no real financial ability to make restitution as ordered. 57 Kan. App. 2d at 167.

Based on its rejection of the plea and restitution factors, the panel concluded that "[u]nder the totality of these circumstances," it was "not persuaded" the record contained substantial competent evidence to support the lower court's finding that Morley accepted responsibility. 57 Kan. App. 2d at 165, 167-68.

In our review of the panel's analysis, some obvious questions arise about its application of the standard of review. For example, the panel said it would "analyze the evidence," and then began discussing at length portions of the record it believed were contrary to the district court's finding. See 57 Kan. App. 2d at 162-67 (pointing to evidence the panel described as Morley's minimization of wrongdoing, discounting Morley's plea because it came with concessions from the State, and dismissing Morley's assurance that he would pay restitution because the panel did not believe he had a workable restitution plan and because he requested the district court impose the amount of the commission he had earned rather than the much higher amount of his victims' total losses). The panel also seemed to equate acceptance of responsibility with an admission of guilt. See 57 Kan. App. 2d at 163 (stating Morley's no contest plea allowed him to "avoid[] admitting his legal responsibility for the securities violations"). And after saying it was considering the "totality of [the] circumstances," the panel ultimately held it was "not persuaded" the record contained substantial competent evidence to support the district court's finding that Morley had accepted responsibility. 57 Kan. App. 2d at 165, 167-68.

These observations suggest a need to revisit how our caselaw has explained appellate review when considering a district court's decision to depart from presumptive imprisonment. In doing so, we acknowledge some fine-tuning appears appropriate.

8

*Standard of review*

The panel correctly noted an abuse of discretion standard applies to determine whether a mitigating factor constitutes a substantial and compelling reason to depart. *Morley*, 57 Kan. App. 2d at 161. But it then recited the law from *State v. Martin*, 285 Kan. 735, 744, 175 P.3d 832 (2008), and engaged in a lengthy evaluation of four considerations listed in *Martin*, i.e., the offenses of conviction, the defendant's criminal history, the departure reason stated, and the purposes and principles of the KSGA. *Morley*, 57 Kan. App. 2d at 169-76. The problem with this is that *Martin* reviewed each factor de novo in doing its analysis. See *Martin*, 285 Kan. at 739. And this is at odds with an abuse of discretion standard of review. That said, the panel's reliance on *Martin*, although misplaced, is understandable.

This court mentioned *Martin*'s four considerations when addressing a similar departure issue in *State v. Brown*, 305 Kan. 674, 697, 387 P.3d 835 (2017). The *Brown* court treated the issue as a legal question subject to an unlimited standard of review. 305 Kan. at 693-94. But six years before *Brown*, our court noted that appellate courts had been obscuring the appropriate standard of review for sentencing departure. See *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). And in discussing the prior caselaw, the *Spencer* court mentioned *Martin*, which might have appeared to make *Martin* still viable. 291 Kan. at 806-07.

The *Spencer* court actually attempted to synthesize the prior cases' standards of review by rewriting them without specifically disapproving them. This was likely the wrong path. By way of explanation, the *Spencer* court outlined its synthesis as follows:

"(1) When the question is whether the record supported a sentencing judge's particular articulated reasons for departure, an appellate court's standard of review is substantial competent evidence; (2) when the question is whether a sentencing judge correctly concluded that particular mitigating factors constituted substantial and compelling reasons to depart in a particular case, including whether those mitigating factors outweighed any aggravating factors if such a balance was necessary, the appellate standard of review is abuse of discretion; (3) when the question is whether a particular mitigating or aggravating factor can ever, as a matter of law, be substantial and compelling in any case, the appellate standard of review is de novo; and (4) when the challenge focuses on the extent of a durational departure, the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history." *Spencer*, 291 Kan. at 807-08.

From this, it can be seen *Martin*'s de novo analysis approach was implicitly disapproved by *Spencer*. And by the same token, *Brown* failed to consider *Spencer*'s synthesis, which may have occurred because *Spencer* did not explicitly disapprove of *Martin* or the other cases the *Spencer* court referenced. In our view, the better approach is to explicitly disapprove of *Martin*, which in turn makes the *Morley* panel's reliance on it error. That said, we also believe the *Spencer* synthesis can stand some retooling.

First, the language in *Spencer* stating "whether those mitigating factors outweighed any aggravating factors if such a balance was necessary," 291 Kan. at 807, was disapproved in *State v. Jolly*, 301 Kan. 313, 322, 342 P.3d 935 (2015) ("[W]e disapprove of any language in our caselaw that would indicate aggravating circumstances can be weighed against mitigating circumstances when considering a departure . . . ."); see also *Bird*, 298 Kan. at 397 (court deleted the clause at issue from the synthesis).

Second, *Spencer*'s next two inquiries are confusing. The second states "when the question is whether a sentencing judge correctly concluded that particular mitigating

10

factors constituted *substantial and compelling* reasons to depart in a particular case, . . . the appellate standard of review is abuse of discretion." (Emphasis added.) *Spencer*, 291 Kan. at 807. But the third states "when the question is whether a particular mitigating or aggravating factor can ever, as a matter of law, be *substantial and compelling* in any case, the appellate standard of review is de novo." (Emphasis added.) 291 Kan. at 807. And with the phrase "substantial and compelling" used in both, they appear to ask the same question, even though each poses a different inquiry—the second asks whether a sentencing court's ultimate conclusion that particular mitigating factors rise to the level of substantial and compelling reasons to depart can be sustained, whereas the third asks whether a particular factor can, as a matter of law, be a mitigating factor in any case. "'[M]itigating circumstances' are not necessarily synonymous with 'substantial and compelling reasons' under the statute." *Jolly*, 301 Kan. at 327.

Third, the *Spencer* synthesis lists three standards of review for processing its respective questions, i.e., substantial competent evidence, abuse of discretion, and de novo. And abuse of discretion creates greater potential for internal intricacies because it can occur in one or more of three ways—when the judicial action is (1) based on an error of fact, (2) based on an error of law, or (3) unreasonable. *Jolly*, 301 Kan. at 325. So by indicating the second question is reviewed for abuse of discretion, the *Spencer* synthesis implies it can be subject to unlimited review. This confusion is evidenced by how the *Morley* panel reviewed the departure issue by indicating it was "'a question of law with no deference given to the sentencing court,'" and then evaluating *Martin*'s four considerations from scratch. *Morley*, 57 Kan. App. 2d at 168-69.

If a nonstatutory factor can be an appropriate mitigating factor under K.S.A. 2019 Supp. 21-6815(c) as a matter of law, and if the existence of that factor is supported by substantial competent evidence, then it would be the sentencing court's discretion to either grant or deny a defendant's departure motion if the sentencing court finds that

11

mitigating factor, either alone or in combination with other factors, is a substantial and compelling reason to depart. See *State v. Wells*, 296 Kan. 65, 94, 290 P.3d 590 (2012) ("[A] district court has the discretion to either grant or deny the [departure] request."). And if this is true, *Spencer*'s second question dealing with the sentencing court's ultimate judgment should not be a legal question subject to unlimited review. But see *Brown*, 305 Kan. at 693-94 (unlimited review of whether the reasons are substantial and compelling reasons for departure in a given case); *State v. Deever*, No. 117,325, 2018 WL 2271408, at *4 (Kan. App. 2018) (unpublished opinion) ("Whether the reasons stated for departure are substantial and compelling is a matter of law over which we exercise unlimited review as to 'whether the reasons, as a whole, are substantial and compelling reasons in this particular case.'"); *State v. Friend*, No. 119,031, 2018 WL 4517346, at *2-4 (Kan. App. 2018) (unpublished opinion) (applying *Martin*; noting "we need not consider the second step under *Martin* or the State's argument about asserted amenability as a legally sufficient standalone basis for departure" in the instant case).

We think it is better to view the analytical problem differently. When an appellate court is considering whether a sentencing court erred in granting or denying departure based on a nonstatutory factor, the reviewing court applies an abuse of discretion standard. This means appellate review of the departure decision should follow a three-step framework: (1) determine whether the sentencing court's nonstatutory factor can be a mitigating factor as a matter of law under K.S.A. 2019 Supp. 21-6815(c); (2) if it can, then decide whether that nonstatutory factor's existence is supported by the record; and (3) if so, then determine whether the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case based on that nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court.

12

Viewed in this way, it remains clear the applicable standard of review is abuse of discretion by matching what is at issue with the traditional abuse of discretion analytical progression. For example, a sentencing court could abuse its discretion at the first step if its ruling was based on an error of law; at the second step, its discretion could be abused if its finding was based on an error of fact; and at the third step its discretion could be abused if its ruling was unreasonable. See *Jolly*, 301 Kan. at 325. Put differently, the respective inquiries on each analytical step are: (1) whether the determination of a nonstatutory factor was guided by an erroneous legal conclusion; (2) whether substantial competent evidence supported the factual finding that the factor existed, i.e., an error of fact; and (3) whether a reasonable person would have taken the view adopted by the sentencing court. And it is important to emphasize that only the first step involves a legal question, subject to unlimited review.

We now apply this process, framed as it is within our traditional review for abuse of discretion, to the district court's departure decision in Morley's case and the panel's error determination.

*Discussion*

At the outset, we can see step one is easily resolved. The panel was correct in holding a defendant's acceptance of responsibility, as a matter of law, can be a mitigating factor supporting a sentencing departure in any case. *Morley*, 57 Kan. App. 2d at 161; see *Jolly*, 301 Kan. at 328; *Bird*, 298 Kan. at 398.

As to step two, the panel erred. What it did was improperly reweigh the evidence when the record plainly includes evidence that Morley accepted responsibility for his crimes. Substantial competent evidence does not require evidence to *prove* a fact; rather, it simply requires evidence to sufficiently *support* the fact-finder's conclusion. *Jolly*, 301

13

Kan. at 325. For Morley's plea, the district court took into consideration the fact that it was a nolo contendere plea, as opposed to a guilty plea, by saying: "He [pled] no contest, but he certainly acknowledged and he understood he was going to be found guilty." See generally K.S.A. 22-3209(1) ("A plea of guilty is admission of the truth of the charge and every material fact alleged therein."); K.S.A. 22-3209(2) ("A plea of nolo contendere is a formal declaration that the defendant does not contest the charge. When a plea of nolo contendere is accepted by the court, a finding of guilty may be adjudged thereon. The plea cannot be used against the defendant as an admission in any other action based on the same act.").

A person does not always have to admit full wrongdoing or concede every material fact the State alleges to be credited with taking responsibility. One can show this acceptance without such sweeping admissions. In this case, Morley expressed responsibility for his actions, even though he tried to diminish his involvement in the offenses, in addition to his no contest plea. And, even though Morley filed for bankruptcy, he presented a "general plan" and showed a willingness to pay restitution. In doing so, he minimized the restitution amount based on his gain, but he still "indicated a willingness to repay even more than that." He also said, "I will take my last dying breath making certain that you get every dime of your money back and my responsibility of that." But whether he agreed to pay the victims' total loss or his actual gain, this should not detract from the point on review at this second step because the district court simply relied on Morley's general agreement to pay restitution—not to reimburse for the victims' total loss.

The record supports the existence of the nonstatutory mitigating factor at issue. In *Jolly*, when the defendant asked for leniency arguing he did nothing wrong and later even denied his crimes, the court still upheld the district court's finding that the defendant accepted responsibility as a departure factor. *Jolly*, 301 Kan. at 327-28; see also 301 Kan.

14

at 325 (substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being enough to support a judgment).

We hold the panel erroneously substituted its own factual findings for those of the district court. Appellate courts do not consider other evidence that might support a different result so long as substantial competent evidence supports the district court's factual finding. Doing otherwise is an improper reweighing of evidence and reassessment of credibility. As mentioned, when "an appellate court reviews the district court's factual findings, it generally does so *only to ensure* that substantial competent evidence supported those findings." (Emphasis added.) *State v. Yazell*, 311 Kan. 625, 627, 465 P.3d 1147 (2020).

Moving to step three, the panel correctly held that the accepting of responsibility factor by itself does not reasonably constitute a substantial and compelling reason to depart in Morley's case from the statutory presumptive sentence. This is true even though, as explained, the panel erroneously engaged in a de novo analysis under *Martin* to reach that conclusion, i.e., "evaluating the offenses of conviction, the defendant's criminal history, the departure reason stated, and the purposes and principles of the KSGA." *Morley*, 57 Kan. App. 2d at 169. But an error in its analytical process does not warrant reversing the panel's ultimate outcome when applying the appropriate standard of review.

The term "'substantial'" in the departure context means "'real, not imagined, and of substance, not ephemeral.'" *Bird*, 298 Kan. at 397; see *State v. Hines*, 296 Kan. 608, 622-23, 294 P.3d 270 (2013) ("A reasonable person would certainly not find much substance behind [victim's] request for leniency based on her belief that Hines is a loving husband, given the fact that he strangled her twice and cut her with a utility knife with the intent of killing her."). The applicable question at step three is whether a reasonable person would find Morley's acceptance of responsibility real, i.e., not imagined, and of substance, not

ephemeral. And in that context, a reasonable person admittedly would find some substance behind Morley's acceptance of responsibility, as evidenced by his plea and agreement to pay restitution.

But looking more deeply, would a reasonable person find Morley's acceptance of responsibility to be a compelling reason to override the statutory presumptive sentence of imprisonment? A compelling reason is one that *forces* a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence. *Bird*, 298 Kan. at 397. And when viewed as such, this reduces the issue in step three to whether a reasonable person would find Morley's specific actions that generically constitute acceptance of responsibility to be compelling enough under these circumstances to *force* a court to abandon the status quo and reject the presumptive sentence the court would ordinarily impose based on the statutory directive.

We hold the answer to that question is no, especially since Morley accepted responsibility only to a limited degree, i.e., he pled no contest to two charges in exchange for the State's dismissing 10 others, minimized his involvement in the offenses, and was reluctant to pay restitution for the victims' entire loss. We cannot conclude a reasonable person would find Morley's accepting of responsibility alone could be a compelling reason to make his case an exception from the statutory presumptive norm.

In *Bird*, the court held the defendant's taking of responsibility, along with an additional mitigating factor, constituted substantial and compelling reasons to depart. *Bird*, 298 Kan. at 399-401. In *Jolly*, the court held the defendant's "pleading guilty" together with several other mitigating factors provided substantial and compelling reasons to depart. *Jolly*, 301 Kan. at 331. But unlike *Bird* and *Jolly*, in Morley's case the district court relied on a single mitigating factor that simply does not rise to a substantial and compelling reason for departure. See *Jolly*, 301 Kan. at 331 (individual factor does

not need to be substantial and compelling by itself so long as the collective circumstances provide substantial and compelling reasons to depart).

That is, "'the facts of the case'" could not have reasonably "'force[d]'" the sentencing court to venture beyond the statutory presumed imprisonment. See *Bird*, 298 Kan. at 397. The applicable sentencing statute directs a presumptive prison sentence when the crimes of conviction result in losses of at least $25,000. And it goes without repeating that the financial losses to the Kansas investors exceeded that statutory trigger by more than 3,000 percent. Plainly, Morley's case penetrates deeply into the class of securities crimes that the Legislature intended would ordinarily receive a prison sentence. In fact, his personal gain from these crimes alone exceed the minimum for presumptive imprisonment. Spread against the limited responsibility Morley took, we hold no reasonable person would find this factor alone renders Morley's case a *compelling* deviation from the norm the Legislature established.

This is not to suggest a defendant's taking of responsibility standing alone could never serve as a substantial and compelling reason to depart in any case. Our abuse of discretion standard necessarily allows for a departure sentence when based on valid mitigating factors supported by the evidence, and there is room for reasonable disagreement whether the proven factors are substantial and compelling under the circumstances. But Morley's case lies outside that realm.

We affirm the panel's judgment, reverse the district court, vacate Morley's sentence, and remand for resentencing.

WILSON, J., not participating.

17